MINNIE WATSON, Appellant, v. HOME MUTUAL INSURANCE ASSOCIATION OF IOWA, Appellee.

No. 41766.

FEBRUARY 7, 1933.

Hayes, Baron & Mathews, H. F. Nelson, and O. P. Bennett, for appellant.

Shull & Stilwill and Putnam, Putnam, Langdon & Fillmore, for appellee.

EVANS, J.—The accident under consideration occurred in the afternoon of August 31, 1930, on Primary Highway 141, and at a point a short distance east of the town of Smithland, Iowa. The highway at this point extends in a general easterly-westerly direction. Smothers was driving his truck westerly on the highway. On the south side of this highway was a ball park. The grandstand of the ball park extended parallel with the highway and about 30 feet therefrom. It faced to the south toward the "diamond." The

east end of the grandstand was just southerly from the point of the accident on the highway. A ball game was in progress. A considerable number of enterprising and somewhat adventurous boys were present to chase the foul balls and to return them to their proper custodian. The fixed fee for the return of a ball was five cents, and this fee operated as the stimulus to rivalry. The paved highway was on a much higher grade than the surface of the ground on either side thereof. The ground on the north side was about six feet lower than the grade of the highway. A foul ball was struck into this northerly territory. Hobart Watson became its captor. He proceeded with due haste toward the ball park. While he was still in the so-called "ditch" on the north side of the paving, he saw the truck on the highway as it was coming from the east. At this point two automobiles were parked on the north side of the highway. Each was facing west, one behind the other, with a space of 12 or 14 feet between them. Hobart proceeded through this space on the run. He passed close to the easterly one, and laid his hand upon it as he passed. These cars were parked partly upon the concrete and partly upon the dirt wing. They occupied a space on the concrete two feet wide. As Hobart reached the pavement, he looked toward the west, but not toward the east. He continued his run to cross the pavement. While so running, he was struck by the truck. His contact was with the left fender of the truck. The collision occurred at a point slightly south of the black center line. He was thrown to the pavement, and the hind wheel of the truck ran over his foot, whereby he was very severely injured.

Hobart himself testified as follows:

"When this foul ball was first knocked, I was standing up by the pavement on the south side. I went across the pavement and went down over the bank into a little pasture on this side of the fence and got the ball and went back up and there was two cars sitting there. I went between those two cars and touched one of them and just gave a look over town and I thought that truck wouldn't hit me so I got clear over on the south side and it struck me and threw me under the back wheel and I got hit with the left fender. There were some other kids after that baseball scrambling for the ball. *I saw the truck coming before it hit me; it was up there by that thank you sign. I saw it there when I was down in the ditch, just coming up.* * * * As I came over the bank there were two cars

along the highway and I went between them. I gave a look over town toward Smithland; I didn't look down toward Mapleton; *and then I began to run.* I had the ball in my hand and was going over to the grandstand. *I had gotten just on the other side of the black line on the south side before I was struck.* * * * I saw him [the truck] when I was coming up there on the bank, but didn't see him after that. * * * That grade [north of the pavement] is tall enough so that if I get right down there by the fence my head isn't any higher than the pavement. * * * While I was down in the ditch before I got clear to the top I looked west toward Smithland and didn't see any cars coming. I climbed right on up to the top of the bank and put my hand on the edge of the car and *struck right straight across the pavement running.*"

The italics are ours. The theory upon which the case was presented for the plaintiff was that Smothers failed to keep a proper lookout; that he failed to observe the requirements of Section 5029; that he failed to give any warning of his approach; that he did not slow down nor apply his brakes until after the collision; and that he failed to conform to the requirements of Section 5031; and that such failures on his part were the proximate cause of the injury.

The evidence seems to be uncontradicted that Smothers was traveling at the rate of 30 miles an hour. There is no dispute as to the circumstances and method of crossing the pavement on the part of Hobart. He is described by his witnesses as a "good runner." He was running with the ball in his hand. One of plaintiff's witnesses estimated the distance of the truck at the moment that Hobart passed between the two parked automobiles and started across the pavement to be 75 feet. The argument of appellant rests wholly upon this hypothesis and the correctness of it. The argument is that in passing over that distance, Smothers had an opportunity to slow down his truck, as well as to give warning of its approach. The speed of the truck is undisputed in plaintiff's evidence; likewise is the fact that the collision occurred just as Hobart had passed the black center line; likewise the fact that the parked cars occupied two feet of the paved highway, that the truck had swerved to the left to pass them, so that it was "straddle" of the black line, and that Hobart was close to the black line when he was struck. The immediate circumstances of the accident, therefore, extending from the time that Hobart appeared from between the two automobiles

until he was struck by the truck, comprised a mere moment of time. The distance from the parked car to the black center line was seven feet. Hobart had, therefore, run a distance not to exceed 10 or 11 feet. It is manifest that such distance could be covered by a human runner in the fraction of a second. The only opportunity that Smothers had to observe the boy and to take any precaution for his safety was that period of time which transpired while the boy was running a distance of 11 feet. This is the equivalent of saying that he had no opportunity at all. The truck could not have been 75 feet distant.

The question at this point is not whether the boy was guilty of contributory negligence. We are always reluctant to attribute contributory negligence to a child, whether older or younger. The question here is whether Smothers was guilty of any negligence. There was no other obstruction on the highway than the two parked automobiles. There was no other person than Hobart upon the highway, and he was obscured from view by the two automobiles. Up to the moment that he emerged from between the automobiles, the course of Smothers was clear. We have before us, therefore, a case of the sudden appearance of the injured party in the path of the moving truck. But in order to exonerate the defendant from a charge of negligence, it is not necessary for such defendant to prove that the act of the injured party was one of negligence on his part. This question has come prominently and frequently before us in this later era of the motor vehicle. The earliest of this line of cases to come before us was that of Bishard v. Engleback, 180 Iowa 1132. That was a case where a child jumped from a vehicle and started to run across the highway in front of an approaching automobile, and was severely injured by collision with such automobile. We held that the defendant was not bound to anticipate such a sudden and unexpected occurrence. Our holding in that case has been followed consistently in a long line of cases since. Borland v. Lenz, 196 Iowa 1148; Brekke v. Rothermal, 196 Iowa 1288; Faatz v. Sullivan, 199 Iowa 875; Klink v. Bany, 207 Iowa 1241; Pettijohn v. Weede, 209 Iowa 902; Whitman v. Pilmer, 214 Iowa 461; Crutchley v. Bruce, 214 Iowa 731; Disher v. Kincaid, 193 Iowa 83; Kessler v. Robbins, 215 Iowa 327.

Pursuant to the foregoing authorities, we deem it clear that no negligence on the part of Smothers was shown. We see little occasion for repeating the discussion contained in the cited cases.

674

The judgment below is accordingly—Affirmed.

KINDIG, C. J., and STEVENS, ALBERT, UTTERBACK, KINTZINGER, and DONEGAN, JJ., concur.